ORDERED.

Dated: December 21, 2016

_____
Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                                                 Case No. 3:10-bk-10665-JAF

RAFAEL CRUZ
and YOLANDA CRUZ,                                      Chapter 7

      Debtors.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case came before the Court upon Motion for Leave to File State Court Action against Trustee, Aaron R. Cohen, Pursuant to 28 U.S.C.A. § 959(b) (the "Motion for Leave") (Doc. 68). The Court conducted a trial on the matter on October 5, 2016. At the conclusion of the trial, the Court took the matter under advisement. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

On December 10, 2010, Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Debtors were represented by attorney Magda Lanza-Huber.

Aaron R. Cohen was appointed as the Chapter 7 Trustee (the "Trustee"). On Schedule A of their bankruptcy petition, Debtors listed the following real property: "Lots Not (sic) 15, 16 of Silver Springs Shores (vacant Lots)." (Ex. 1). The description of the property listed in Schedule A was not a complete legal description. The Trustee testified that when a debtor's schedule contains an incomplete legal description, the Trustee requests that the debtor's attorney provide him with a deed to the property. The Trustee's office also independently searches the public records to obtain a legal description. The Trustee contacted Ms. Lanza-Huber and requested a copy of a deed to the property listed in Schedule A but it appears he was not provided with one. When the Trustee's office conducted a search in the public records under the name "Rafael Cruz," lot 16 in the public records of Marion County, it determined that the legal description of the property listed as Lot 16 on Debtors' Schedule A was SE 58th Avenue, Belleview, Silver Springs Shores, Marion County, Florida, Unit 24, Blk 549, Lot 16, Parcel ID 9024—0549-16 (the "Legal Description").

On April 27, 2011, the Trustee filed with the Court a Notice of Public Auction Sale, indicating that he intended to conduct an auction of property and listed the Legal Description under Items to be Sold. The Notice was sent to Ms. Lanza-Huber. In fact, the Legal Description described property owned not by Debtors but by an individual named Rafael Gonzalez Cruz (the "Movant"), who is unrelated to Debtors. On May 22, 2011, the Trustee conducted an auction at which he purportedly sold the property set forth in the Legal Description (the "Property") for $4,250.00 to Roy Smith, Sr. (Comp. Ex. 3). On June 30, 2011, the Trustee issued a Trustee's Deed purporting to convey the Property to Mr. Smith. (Ex. 4.) The Trustee testified that a trustee's deed transfers

2

whatever right, title, and interest the bankruptcy estate has in property, ranging from fee simple absolute to nothing. A trustee's deed makes no warranties and is less than a quit claim deed. On October 14, 2011, Mr. Smith transferred the Property by Warranty Deed to First Aspen, LLC ("First Aspen"). (Ex. 5). Old Republic Title ("Old Republic") insured the title of the Property when Mr. Smith transferred it to First Aspen and did not discover that the Legal Description was not the legal description of the property listed on Debtors' schedules.

In November of 2011, the Trustee received a letter dated November 15, 2011 from Lawrence Callaway, III, an attorney representing Roberto Gonzales, Movant's son. (Comp. Ex. 6). The letter described the transfer of the Property from the Trustee to Mr. Smith and from Mr. Smith to First Aspen and indicated that Movant owned the Property. (Id.) The letter also stated that the Property "would never have properly been part of [Debtors]' bankruptcy estate" and asked that the Trustee contact Mr. Callaway "so that we might discuss how to unscramble this mess." (Id.)

On November 16, 2011, the Trustee called Mr. Callaway to discuss the matter. The Trustee informed Mr. Callaway that he was legally barred from bringing an action in the bankruptcy court. The Trustee testified that he was unable to take any action once the Property left Mr. Smith's hands, stating "I couldn't give him his money and take title back, I couldn't issue a corrective deed which would have bound First Aspen, and I did not have standing to file a quiet title action on behalf of the Movant." The parties discussed Mr. Callaway filing a quiet title action in Marion County Circuit Court and the Trustee offered to assist Movant in pursuing such an action.

Thereafter, the Trustee received another letter from Mr. Callaway dated November 17, 2011, which requested that the Trustee hold the proceeds received as a result of the sale of the Property until "we get this straightened out." (Id.) The letter also stated: "I look forward to receiving the documentation we discussed." (Id.) The Trustee sent the documentation which Mr. Callaway requested and did not hear anything further from Mr. Callaway. In April, 2012, the Trustee, having heard nothing further from Mr. Callaway, disbursed the proceeds from the sale of the Property to Debtors' creditors.

In May of 2013, the Trustee received a copy of a letter dated May 10, 2013 addressed to Ms. Lanza-Huber. (Ex. 7). The letter was from Preston Oughton, a new attorney representing Movant and his son, Roberto Gonzalez. The letter reiterated that the Trustee had sold Movant's property and that the sale had created a hardship for Roberto Gonzalez because the Property was subject to a 40 year billboard lease agreement which yielded an annual income of $2,500.00. The letter demanded $100,500.00 in damages. After receiving the letter, the Trustee contacted his malpractice carrier and was assigned defense counsel.

As a result of Old Republic's failure to discover that the Legal Description was not the legal description of the property listed on Debtors' schedules, Old Republic paid $13,000.00 to First Aspen. After the Trustee received a copy of the demand letter sent to Ms. Lanza-Huber, Old Republic threatened to pursue a subrogation claim against him for the $13,000.00 it had paid to First Aspen. Old Republic did not pursue the subrogation claim against the Trustee and released him in June, 2014. The Trustee testified that First Aspen offered to transfer the Property back to Movant but that he was not a party to the negotiations. No such transfer occurred.

4

More than two years later, on October 15, 2015, Movant and Roberto Gonzalez filed a multi-count complaint in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida suing, among other parties, Aaron R. Cohen, P.A. (the "State Court Action"). The complaint included counts: 1) to quiet title (as to First Aspen); 2) for ejectment (as to First Aspen); 3) for unjust enrichment (as to First Aspen); 4) for cancellation of the deed (as to First Aspen); 5) for breach of contract (as to Crown Outdoor); and 6) for damages for negligence (as to Magda Lanza, P.A. and Aaron R. Cohen, P.A.). The Trustee's defense counsel filed a motion to dismiss in the State Court Action. On February 9, 2016, the Circuit Court dismissed Aaron R. Cohen, P.A. as a defendant without prejudice to the filing of an amended complaint. (Ex. 9).

## Conclusions of Law

Movant seeks leave from this Court to file an Amended Complaint in the State Court Action adding the Trustee as a defendant. Movant recognizes the potential applicability of the Barton Doctrine. However, Movant argues that because the Trustee became aware that there was an issue with the title of the Property shortly after the transfer and proceeded to disburse the funds resulting from the sale, his conduct was ultra vires. The first issue before the Court is whether the Barton Doctrine applies, thus requiring Movant to obtain leave from this Court before proceeding against the Trustee in the State Court Action. If the Barton doctrine applies, the Court must then decide whether to grant such leave.

The Barton Doctrine originated from a Supreme Court case which held that before a party brings suit against a receiver, the party must obtain leave of the court by which the receiver was appointed. Barton v. Barbour, 104 U.S. 126, 127 (1881). The Barton

Doctrine also applies to a trustee or other bankruptcy-court-appointed officer for acts done in the actor's official capacity; accordingly, a party must obtain leave of the bankruptcy court before initiating such an action. Carter v. Rodgers, 220 F.3d 1249, 1252 (11th Cir. 2000). There are exceptions to the Barton Doctrine. Section 959(a) of Chapter 28 of the United States Code provides for a "carrying on business" exception and states that a "[t]rustee … of any property … may be sued without leave of the court appointing [him], with respect to any of [his] acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). "The 'carrying on business' exception in section 959(a) is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example conducted a retail store.'" Carter, 220 F.3d at 1254 (quoting Lebovits v. Scheffel (In re Lehal Realty Assocs.), 101 F.3d 272, 276 (2d Cir. 1996)). Movant recognizes that the "carrying on business" exception does not apply in the instant case.

The Supreme Court recognized another exception to the Barton Doctrine, the "ultra vires" exception. Barton, 104 U.S. at 134 ("[I]f, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires."). Under this exception, a receiver loses the protection of the Barton Doctrine for actions that are beyond the scope of his or her duties authorized by the receivership court. "The classic application of the 'ultra vires' exception is the case of an action against a receiver who seizes or otherwise attempts to administer property that is

6

not receivership property, but that actually belongs to a third party." <u>In re DMW Marine, LLC</u>, 509 B.R. 497, 506 (Bankr. E.D. Penn. 2014).

Upon an extensive and exhaustive review, the Court has only found two cases which have permitted a party to sue a bankruptcy trustee or receiver, without leave of the court by which the trustee or receiver was appointed, for wrongful possession/ improper seizure of non-estate property  The first is <u>Leonard v. Vrooman</u>, 383 F.2d 556, 560 (9th Cir. 1967).  In that case the bankruptcy trustee made two "mistakes."  <u>Id.</u>  He broke into and seized possession of real property belonging to a third party, which was not listed as an asset of the debtors' bankruptcy estate, and he failed to relinquish possession of the real property when he discovered that title to the property was claimed by and recorded in the name of the third party.  <u>Id.</u>  The court noted that while "[i]t is true the receiver trustee is charged by the Bankruptcy Act with gathering assets of the bankrupt, and that his failure to act diligently in this respect could result in a claim against him ... [the] diligence in this case was misdirected and should have been exercised in ways other than by forcible entry and retention of possession."  <u>Id.</u>  While the court did not explicitly refer to the Barton Doctrine, it held that the trustee could be sued without leave of the bankruptcy court for damages arising out of his illegal occupation of the real property.  <u>Id.</u>

The second case involving the seizure of non-estate property is <u>Teton Millwork Sales v. Schlossberg</u>, 311 Fed. Appx. 145 (10th Cir. 2009).  In that case a corporation, in which the husband in an underlying divorce proceeding was a twenty five percent shareholder, claimed that a court appointed receiver wrongfully seized its mail and other financial assets, consisting of a checking account and two securities accounts.  <u>Id.</u> at 147.

7

The court concluded that the ultra vires exception to the Barton Doctrine applied. Id. at 148.

The Court must determine whether the ultra vires exception applies to the facts before it. The Court finds that it does not. Although Vrooman and Schlossberg are persuasive authorities, the facts in those cases are distinguishable from the instant case. The property in Vrooman involved the wrongful "seizure of possession" of real property. Moreover, the wrongful seizure was coupled with the trustee's retention of possession after he became aware of the wrongful seizure. A trustee's deed transfers whatever right, title, and interest a bankruptcy estate has in property. In the instant case, the bankruptcy estate had no interest in the Property. As a result, the June 30, 2011 Trustee's Deed which purported to convey the Property to Mr. Smith clouded title to the Property but conveyed nothing. Moreover, unlike the trustee in Vrooman, the Trustee in the instant case, upon learning of his mistake, contacted Mr. Callaway and offered to do the only thing he could to remedy the mistake, to assist Movant in pursuing a quiet title action. The wrongfully seized assets in Schlossberg involved the seizure of mail, a checking account and two securities accounts, not an attempted transfer of real property. The Court finds that the ultra vires exception to the Barton Doctrine does not apply in the instant case and Movant is therefore required to obtain leave from this Court before proceeding against the Trustee in state court.

The second issue is whether such leave is appropriate. The Court finds that it is not. While a number of Circuit Courts have addressed the level of wrongdoing which may subject a trustee to personal liability, the Eleventh Circuit has done so only in dictum. In In re Red Carpet Corporation of Panama City Beach, 708 F.2d 1576, 1579

(11th Cir. 1983), the issue was whether a bankruptcy court can both deny an award of fees to an attorney for a Chapter 11 debtor in possession based on wrongdoing or negligence and also assess money damages against him for losses due to such wrongdoing or negligence. Id. at 1577. The court held that the bankruptcy court could deny an award of the fees but could not also assess money damages on account of the wrongdoing or negligence. Id. The court stated in dictum "[a] bankruptcy trustee is liable for wrongful conduct or negligence, and he may be surcharged. Similarly a bankruptcy receiver may be held personally liable." Id. at 1578. Such dictum is not binding on the Court. The Court holds that in order for a trustee to be subject to personal liability, his actions must rise to the level of willful and deliberate conduct or gross negligence. See Barbee v. Price Waterhouse, LLP (In re Solar Fin. Servs., Inc.), 255 B.R. 801, 804 (Bankr. S.D. Fla. 2000). "Gross negligence … is defined as an act or omission that a reasonable, prudent person would know is likely to result in injury to another." Eller v. Shova, 630 So.2d 537, 540 n.3 (Fla. 1993). While the Trustee's actions in this case may well constitute negligence, they do not rise to the level of gross negligence or willful and deliberate conduct. Accordingly, granting Movant leave to proceed against the Trustee personally in the State Court Action would be an exercise in futility and a waste of resources.[1]

---

[1] The Court also notes that it is perplexed as to why this case has languished for almost five years. As the Court noted, the Trustee sent the documents requested by Movant's then attorney and offered his assistance to correct the mistake in a quiet title action immediately upon becoming aware of the mistake in November of 2011. For reasons unknown to the Court, Movant's then attorney did not file a quiet title action to resolve the matter at that time. Instead, Movant's current attorney, who began representing Movant no later than May, 2013, waited until October, 2015, approximately two and a half years later, to commence the State Court Action. As a result, it appears to the Court that a matter that could have been promptly and easily resolved has morphed from a molehill into a mountain.

**Conclusion**

The ultra vires exception to the Barton Doctrine does not apply to the Trustee's actions in this case. Accordingly, Movant is required to obtain leave from this Court before proceeding against the Trustee in the State Court Action. Because the Trustee's actions do not rise to the level of gross negligence or willful and deliberate conduct, the Court will not grant leave for the Movant to proceed against the Trustee personally in the State Court Action. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Attorney, Lisa Cohen, is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of the Order.